T.C. Memo. 2003-156

UNITED STATES TAX COURT

MICHAEL W. DUNCAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10284-02.                    Filed May 28, 2003.

Michael W. Duncan, pro se.

<u>Jason W. Anderson</u> and <u>Kathleen C. Schlenzig</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respon-
dent's motion for summary judgment (respondent's motion).
Petitioner filed a response to respondent's motion (petitioner's
response).  We shall grant respondent's motion.

## Background

Pursuant to the Court's Order issued under Rule 37(c)[1] on January 23, 2003, all of the affirmative allegations in paragraph 6 of the answer, and consequently all of the facts on which respondent relies in respondent's motion, are deemed admitted.

Petitioner had a mailing address in Glenview, Illinois, at the time he filed the petition in this case.

During 1990 and 1991, petitioner operated and was the president, corporate secretary, and sole shareholder of Duncan & Associates, Inc. (Duncan & Associates), a subchapter C corporation. During those years, Duncan & Associates engaged in the insurance brokerage business.

As of December 31, 1989, petitioner had an outstanding loan balance of $86,562 with respect to amounts that Duncan & Associates had lent petitioner for which that company did not charge petitioner any interest. (We shall refer to the interest that Duncan & Associates did not charge petitioner on his outstanding loan from that company as forgone interest.) During 1990 and 1991, petitioner did not pay Duncan & Associates any interest on petitioner's outstanding loan balance with that company.

During 1990, when petitioner was approximately 42 years old, he withdrew $10,000 from Duncan & Associates' Money Purchase

_____

[1]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code (Code) in effect for the years at issue.

Pension Plan & Trust and $17,000 from Duncan & Associates' Profit Sharing Plan & Trust. (We shall refer collectively to those withdrawals as petitioner's 1990 retirement plan withdrawals.) At all relevant times, petitioner knew that petitioner's 1990 retirement plan withdrawals constitute income to him for 1990.

On or about April 13 and July 18, 1991, Duncan & Associates received checks totaling $49,500, which petitioner retained and/or deposited in his bank account. At all relevant times, petitioner knew that $40,000 of the total $49,500 in such checks constitutes income to him for 1991. (We shall refer to such $40,000 of such checks as petitioner's 1991 check amount.)

During 1990 and 1991, respectively, after taking into account Mr. Duncan's payments or other transfers to or on behalf of Duncan & Associates of amounts totaling $100,900 and $128,779.98, Duncan & Associates made payments or transfers to or for the benefit of petitioner of amounts totaling at least $187,813[2] and $331,484. (We shall refer to those respective amounts paid or used for petitioner's behalf during 1990 and 1991 as petitioner's 1990 and 1991 personal-benefit amounts.) At all relevant times, petitioner knew that petitioner's 1990 and 1991

---

[2]The amounts deemed established under Rule 37(c) with respect to the amounts that Duncan & Associates paid to or expended for the benefit of petitioner during 1990 exceed the amounts for such purposes determined in the notice of deficiency for that year. Respondent does not claim an increased deficiency for 1990 with respect to that excess. We accept respondent's position.

personal-benefit amounts constitute income to him for 1990 and 1991, respectively.

At a time not disclosed by the record before September 1992, respondent commenced examinations of petitioner and of Duncan & Associates with respect to their respective taxable years 1990 and 1991.

On October 8, 1992, petitioner filed Federal income tax (tax) returns for his taxable years 1990 (1990 return) and 1991 (1991 return) after the respective due dates for such returns had passed. Petitioner did not file returns for his taxable years 1990 and 1991 until after respondent commenced an examination of those returns because he did not want to pay the respective tax due for such years. When petitioner filed his 1990 return and 1991 return on October 8, 1992, petitioner knew and understood that each such return understated his income for each such year. To illustrate, in his 1990 return and/or his 1991 return, petitioner did not report as income the following: (1) The forgone interest on petitioner's outstanding loan balance with Duncan & Associates for 1990 and 1991; (2) petitioner's 1990 retirement plan withdrawals; and (3) petitioner's 1990 and 1991 personal-benefit amounts, including petitioner's 1991 check amount. Moreover, in his 1990 return, petitioner did not report the 10-percent additional tax imposed by section 72(t) on petitioner's 1990 retirement plan withdrawals. In addition, although peti-

tioner was married at the end of his taxable years 1990 and 1991, petitioner claimed a filing status of single in his respective returns for those years.

During respondent's examinations of petitioner and of Duncan & Associates with respect to their respective taxable years 1990 and 1991, petitioner fraudulently and corruptly obstructed and impeded, and endeavored to obstruct and impede, the due administration of the Code by knowingly creating and causing the creation of false and fraudulent documents for the purpose of obstructing and impeding respondent's examinations of petitioner and of Duncan & Associates with respect to their respective taxable years 1990 and 1991 and for the purpose of concealing from respondent the falsity of petitioner's return for each of his taxable years 1990 and 1991 and of Duncan & Associates' return for each such year.

On March 31, 1998, petitioner entered into a plea agreement with the United States Attorney for the Northern District of Illinois, in which petitioner pleaded guilty to one count of obstructing and impeding the due administration of the Code in violation of section 7212(a).[3]

---

[3]Sec. 7212(a) provides:

SEC. 7212.   ATTEMPTS TO INTERFERE WITH
             ADMINISTRATION OF INTERNAL REVENUE LAWS.

    (a) Corrupt or Forcible Interference.--Whoever

(continued...)

On March 20, 2002, respondent issued to petitioner a notice of deficiency (notice) with respect to his taxable years 1990 and 1991. In that notice, respondent determined deficiencies in, additions under section 6651(a)(1) to, and fraud penalties under section 6663(a) on petitioner's tax, as follows:

|  |  | Addition to Tax | Fraud Penalty |
| Year | Deficiency | Under Sec. 6651(a)(1) | Under Sec. 6663(a) |
| 1990 | $69,655 | $17,642.85 | $52,241.25 |
| 1991 | 109,700 | 10,973.21 | 82,275.00 |

Respondent further determined in the notice that petitioner has imputed dividend income for 1990 and 1991 under section 7872 of $7,089 and $7,670, respectively, as a result of the forgone interest on petitioner's outstanding loan balances with Duncan & Associates during those respective years.

Respondent also determined in the notice that petitioner has

---

[3](...continued)
corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

constructive dividend income for 1990 and 1991 of $187,813[4] and $331,484, respectively, as a result of petitioner's 1990 and 1991 personal-benefit amounts during those respective years.

Respondent further determined in the notice that petitioner has income for 1990 of $27,000 as a result of petitioner's 1990 retirement plan withdrawals.

Respondent also determined in the notice that petitioner is liable for the 10-percent additional tax under section 72(t) of $2,700 as a result of petitioner's 1990 retirement plan withdrawals.

Respondent further determined in the notice that petitioner's filing status for each of his taxable years 1990 and 1991 was married filing separate.

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

All of the facts on which respondent relies in respondent's motion have been deemed admitted. Those facts include the material facts on which we may proceed to resolve the issues in respondent's motion, including the issue relating to the fraud penalties under section 6663(a), see, e.g., Doncaster v. Commis-

---

[4]See supra note 2.

sioner, 77 T.C. 334, 337 (1981).  We conclude that there are no genuine issues of material fact regarding the issues raised in respondent's motion.

With respect to respondent's determinations that petitioner has a deficiency in tax for each of the years at issue and that he is liable for each of those years for an addition to tax under section 6651(a)(1), on the record presented, we sustain those determinations.[5]

---

[5]In petitioner's response, petitioner does not dispute respondent's determinations that he has deficiencies in tax for the years at issue.  In fact, petitioner admits in that response that "There clearly are monies due and owing the IRS which the petitioner admits to and wants to settle."

Petitioner's response, however, does not address the balance of the issues presented in respondent's motion.  To illustrate, petitioner's response states in part:

The respondent has filed a motion for summary judgment based upon lack of response and stated allegations and to this end I (we) request that you consider mitigating circumstances, as follows:

1.  Petitioner does not have funds to hire legal counsel needed to prepare briefs and responses to motions.
2.  Petitioner [sic] records were destroyed in a flood [sic] August 22, 2002, at a warehouse facility in Glenview, Illinois.
3.  Petitioner sustained a disabling injury resulting in two (2) surgeries to his left foot with continuing care through Mayo Clinic Rochester, Minnesota.
4.  Petitioner requests the court to consider the six (6) year delay during which the IRS did not assess outstanding taxes.
5.  In excess of 80% of amounts due and owing IRS are accrued interest and penalties resulting

(continued...)

With respect to the fraud penalty under section 6663(a) that respondent determined against petitioner for each of his taxable years 1990 and 1991, section 6663(a) imposes a penalty equal to 75 percent of the portion of any underpayment that is attributable to fraud.  For purposes of section 6663(a), if the Commissioner of Internal Revenue (Commissioner) establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is to be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes by a preponderance of the evidence is not attributable to fraud.  Sec. 6663(b).  In order for the fraud penalty to apply, the Commissioner must prove by clear and convincing evidence, sec. 7454(a); Rule 142(b), that an underpayment exists and that some portion of such underpayment is attributable to fraud.  Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).

To prove the existence of an underpayment, the Commissioner

---

⁵(...continued)
from the IRS admitting to losing/misplacing Mr. Duncan's and Duncan & Associates' files.
6. Petitioner and legal counsel Mr. Fred Foreman, former U.S. attorney [sic] for the 7th District, requested on numerous occasions amounts due and owing the IRS for tax years 1990 and 1991 only to be told that cases involving fraud or allegations of fraud could not be paid until concluded.

We note that the so-called mitigating circumstances quoted above in paragraph 2 of petitioner's response is inconsistent with petitioner's petition in which he alleges that his records for the years at issue "were discarded due to their age".

may not rely on a taxpayer's failure to carry his or her burden of proof with respect to the underlying deficiency. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). The Commissioner must prove only that an underpayment exists, and not the precise amount of such underpayment. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Petzoldt v. Commissioner, supra at 699-700.

Petitioner did not report as income in his 1990 return and/or his 1991 return the following: (1) The forgone interest on petitioner's outstanding loan balance with Duncan & Associates for 1990 and 1991; (2) petitioner's 1990 retirement plan withdrawals; and (3) petitioner's 1990 and 1991 personal-benefit amounts, including petitioner's 1991 check amount. Nor did petitioner report in his 1990 return the 10-percent additional tax imposed by section 72(t) with respect to petitioner's 1990 retirement plan withdrawals. Moreover, in petitioner's response, petitioner admits that "There clearly are monies due and owing the IRS which the petitioner admits to and wants to settle."

On the instant record, we find that respondent has established by clear and convincing evidence that there was an underpayment of petitioner's tax for each of his taxable years 1990 and 1991.

In order to prove fraudulent intent, the Commissioner must

prove by clear and convincing evidence that the taxpayer intended to evade tax, which he or she believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.  Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Parks v. Commissioner, supra at 661.  The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  DiLeo v. Commissioner, supra at 874; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Fraud is never presumed or imputed and should not be found in circumstances which create at most only suspicion.  Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Petzoldt v. Commissioner, supra at 699-700.  Direct evidence of the requisite fraudulent intent is seldom available.  Petzoldt v. Commissioner, supra at 699; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).  Consequently, the Commissioner may prove fraud by circumstantial evidence.  Toussaint v. Commissioner, supra at 312; Rowlee v. Commissioner, supra at 1123; see Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368.

The courts have identified a number of badges of fraud from which fraudulent intent may be inferred, including (1) the understatement of income, (2) the making of false and inconsistent statements to revenue agents, and (3) the failure to cooperate with tax authorities.  See Bradford v. Commissioner, 796 F.2d

303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Parks v. Commissioner, supra at 664-665. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud. Petzoldt v. Commissioner, supra at 700; see Bradford v. Commissioner, supra at 307.

The record in this case contains indicia of fraud by petitioner. When petitioner filed his returns for 1990 and 1991, he knew and understood that each such return understated his income for each such year. In addition, petitioner did not file returns for his taxable years 1990 and 1991 until after respondent commenced an examination of those returns because he did not want to pay the respective tax due for such years. Moreover, during respondent's examinations of petitioner and of Duncan & Associates with respect to their respective taxable years 1990 and 1991, petitioner fraudulently and corruptly obstructed and impeded, and endeavored to obstruct and impede, the due administration of the Code by knowingly creating and causing the creation of false and fraudulent documents for the purpose of obstructing and impeding respondent's examinations of petitioner and of Duncan & Associates with respect to their respective taxable years 1990 and 1991 and for the purpose of concealing from respondent the falsity of petitioner's return for each of his taxable years 1990 and 1991 and of Duncan & Associates' return for each such year. In addition, although petitioner was married at the end of his taxable years 1990 and 1991, petitioner

claimed a filing status of single in his respective returns for those years.

Based upon our examination of the entire record before us, we find that respondent has established by clear and convincing evidence that petitioner intended to evade tax for his taxable years 1990 and 1991, which he believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.

We have considered all of petitioner's contentions, arguments, and requests that are not discussed herein, and we find them to be without merit and/or irrelevant.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's motion and decision will be entered for respondent</u>.